Filed 7/28/15  P. v. Khneiser CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062445 |
| v. | (Super.Ct.No. RIF1401355) |
| RONY ANTOINE KHNEISER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Becky Dugan, Judge.  Affirmed with modifications.

Rony A. Khneiser, in pro. per.; Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Pursuant to a plea to the court, defendant and appellant Rony Antoine Khneiser pled guilty to the sheet as charged to numerous serious and violent felony offenses and a misdemeanor offense.  Defendant also admitted to all of the alleged firearm enhancement

1

allegations and the six prior prison terms.  In return, defendant was sentenced to the indicated term of 10 years in state prison with credit for time served.  Defendant appeals from the sentence or other matters occurring after the plea.  We find no error and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On January 24, 2014, defendant and codefendants Joshua Brown and Bruce Grizzle, while impersonating police officers broke into a residence, tied the victims, and committed a robbery and carjacking.[1]  During the commission of the offenses, defendant and codefendant Brown were armed with and personally used a BB gun, and codefendant Grizzle was armed with and personally used a shotgun.

On May 6, 2014, a second amended felony complaint was filed against defendant and his codefendants.  Defendant was charged with two counts of first degree robbery (Pen. Code, § 211, § 212.5, subd. (a); counts 1 & 2);[2] two counts of carjacking (§ 215, subd. (a); counts 3 & 4); one count of first degree burglary (§ 459; count 5) while another person, other than an accomplice, was present in the residence (§ 667.5, subd. (c)(21)); two counts of false imprisonment by violence, menace, or fraud (§ 236; counts 6 & 7); impersonating a police officer (§ 538d, subd. (a); count 9), a misdemeanor; and two counts of receiving stolen property under $950 (§ 496, subd. (a); counts 12 & 13).  The

_____

[1]  Codefendants Brown and Grizzle are not parties to this appeal.

[2]  All future statutory references are to the Penal Code unless otherwise stated.

second amended complaint also alleged, as to counts 1 through 4, 6, and 7, that defendant personally used a deadly and dangerous weapon, to wit, a BB gun, in violation of section 12022, subdivision (b)(1); and that defendant was armed with a firearm and was a principal where another principal was armed with a firearm, to wit, a shotgun in violation of section 12022, subdivision (a)(1). The second amended complaint further alleged that defendant had suffered six prior prison terms within the meaning of section 667.5, subdivision (b), for five second degree burglary (§ 459) offenses and one offense for forgery (§ 470, subd. (b)). A petition to revoke defendant's mandatory supervision was also filed.

On October 17, 2014, pursuant to a plea with the court, defendant pled guilty to the sheet as charged. He also admitted the gun enhancement allegations and the prior prison term allegations. He further admitted to violating his mandatory supervision by committing the new offenses. After directly examining defendant, the trial court found that defendant understood the nature of the charges and the consequences of the plea; that the plea was entered into knowingly and intelligently; and that there was a factual basis for his plea. In return, defendant was promised an indicated sentence of 10 years in state prison with half-time credit for time served in local custody, despite pleading guilty to serious and violent offenses. Defendant's plea form near section "(e)" and "Signatures," noted in parentheses that the "sentence will be mid term 6 years [for the first degree robbery alleged in] Count 1, plus 1 year consecutive for [section] 12022[, subdivision] (a)(1) [the principal armed with a firearm allegation]," plus one year each for three of the

3

prior prison term allegations, for a total sentence of 10 years.  The plea form was not signed by the district attorney, but was signed by defendant and his counsel.

The sentencing hearing was held on November 6, 2014.  At that time, the court informed defendant and his codefendants of the following:  "[defendants], I know that with your priors that several of your priors may be reduced on the filing of a Petition pursuant to the new law [Proposition 47].  While I say that, the way it has to work is you file a Petition, . . . the DA gets served a copy of the Petition, the DA [*sic*] can check on all of your prison records, how you behaved in prison.  And the case gets set for hearing.  And the hearing is are you too dangerous to grant your request to reduce those to a misdemeanor.  [¶]  So you can see it's done consequently, it's not done now.  The way I've worked your sentence, I'm not giving any of you any time on your priors.  So we can avoid the issue of whether they should be reduced later. . . .  I gave you all indicated sentences of time.  I could get that to that time a number of ways based on the conduct of your case.  And so when I'm sentencing you today, you will not get sentenced on consecutive time on your priors.  I'm just going to give you your time on the counts themselves.  As you know, I have lots of time to give you.  They are all in the plus-20s, easily.  I can get to the numbers without using your priors, which is what I'm going to do. . . ."

The court thereafter heard a statement from one of the victims, who emphasized how the defendants had ruined her life, how she has been in counseling, how she could no longer trust anyone, and how she has been in constant fear since the incident.  The

4

court then asked the defendants if they would like to say anything to the victim. Codefendant Brown apologized to the victim. Defendant also repeatedly apologized to the victim and stated that he was high on drugs and that he did not have the intent to hurt anyone.

In response to the victim's comment about the defendants deserving more time, the court stated: "And, ma'am, they didn't get any cases or charges reduced. They are pleading to their sheet. They are pleading to multiple-strike offenses. Nothing got reduced. They are admitting their priors. They are getting 18 years and 10 years. They are getting significant chunks of time that they will do at 85 percent. They don't get Fed-kicks or anything like that. [¶] The Court did take into consideration that it was as bad as it could get without somebody getting hurt. But interestingly enough, all these gentlemen's priors are non violent. These are all a bunch of idiot druggies that thought this was a very clever thing to do, and very funny, sort of an inside job. They didn't expect that a stranger victim would be there. It doesn't excuse them. That's why I'm giving them all the time I'm giving them. They did an outrageous thing. They caused you permanent harm. But this is the first violent offense for any of these gentlemen. And that's why I didn't totally throw away the key. [¶] I think if we can get them off drugs and rehabilitate them, maybe they will wake up and realize, you know, what harm they did to a human being."

The court thereafter sentenced defendant and his codefendants. Defendant was sentenced to 10 years in state prison as follows: the upper term of nine years on count 1,

plus one year for the principal armed with a firearm enhancement. The court ran the sentences on counts 2 through 7, 9, 12, and 13 concurrently with count 1; reduced count 12, one of the receiving stolen property allegations, to a misdemeanor; stayed the sentences on the remaining gun enhancement allegations; and stayed the sentences on the six prior prison terms. The court also awarded defendant 561 days credit for time served.

II

DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. In his three-page letter brief, defendant does not challenge his 10-year sentence, believing it to be "fair and just." Rather, he claims that he is being "discriminated against for relief" of Proposition 47; that he should benefit from the passage of Proposition 47; that the court breached the plea agreement contract when it sentenced him to nine years on count 1, plus one year for the principal armed with a firearm instead of sentencing him to the agreed upon term of six years on count 1, plus one year for the gun enhancement, plus three years for three of the six prior prison term

enhancements; and that the court never asked him if he wanted to withdraw his plea. Defendant's claims are unmeritorious.

A.    *Plea to the Court*

To address defendant's contentions, we must first determine how the October 17, 2014 transaction should be characterized. Defendant variously describes the transaction as a "plea deal" and "plea agreement."

A plea bargain and an indicated sentence are distinctly different ways of resolving a criminal case without a trial. "The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates *an agreement negotiated by the People and the defendant* and approved by the court. [Citations.] Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged." (*People v. Orin* (1975) 13 Cal.3d 937, 942, italics added.) A " 'negotiated plea agreement is a form of contract' " and is consequently "interpreted according to general contract principles." (*People v. Segura* (2008) 44 Cal.4th 921, 930 (*Segura*).) "Acceptance of the agreement binds the court and the parties to the agreement." (*Segura*, at p. 930.)

"Although a plea agreement does not divest the court of its inherent sentencing discretion, 'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract

7

between the defendant and the prosecutor to which the court consents to be bound."

[Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." [Citation.]' " (*Segura*, at p. 931; see § 1192.5 ["Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea."].)

In contrast, "[i]n an indicated sentence, a defendant admits all charges, including any special allegations[,] and the trial court informs the defendant what sentence will be imposed. *No 'bargaining' is involved* because no charges are reduced. [Citations.]" (*People v. Allan* (1996) 49 Cal.App.4th 1507, 1516 (*Allan*), italics added.) Rather, "the trial court simply informs a defendant 'what sentence he will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea.' [Citations.]" (*People v. Superior Court* (*Ramos*) (1991) 235 Cal.App.3d 1261, 1271 (*Ramos*).) "In contrast to plea bargains, no prosecutorial consent is required. [Citation.]" (*Allan*, at p. 1516.)

Another significant distinction between a plea bargain and an indicated sentence is that only a plea bargain is subject to the procedural requirements set forth in Penal Code

8

section 1192.5 for the acceptance of a guilty plea.[3]  Section 1192.5 only applies where a guilty plea is "accepted by the prosecuting attorney in open court . . . ." (§ 1192.5.)  Thus, that section only governs " 'the procedures to be followed by the trial courts in dealing with negotiated pleas, commonly known as plea bargaining.'  [Citation.]" (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1181 (*Hoffard*); accord, *People v. Fairbank* (1997) 16 Cal.4th 1223, 1245 [section 1192.5, "by its terms, applies only to 'negotiated pleas' "].)  An indicated sentence is not a negotiated plea and therefore is not subject to section 1192.5.  (*Hoffard*, at p. 1184, fn. 12.)

---

**3**  Section 1192.5 provides:  "Upon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, other than a violation of paragraph (2), (3), or (6) of subdivision (a) of Section 261, paragraph (1) or (4) of subdivision (a) of Section 262, Section 264.1, Section 286 by force, violence, duress, menace or threat of great bodily harm, subdivision (b) of Section 288, Section 288a by force, violence, duress, menace or threat of great bodily harm, or subdivision (a) of Section 289, the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it.  [¶]  Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea.  [¶]  If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so.  The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea.  [¶]  If the plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter the plea or pleas as would otherwise have been available.  [¶]  If the plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals."

The record in this case does not support the conclusion that there was any negotiated plea between defendant and the prosecution. The prosecutor never accepted defendant's guilty pleas in open court, nor did she ever represent to the court that she and defense counsel had reached any plea agreement. Although the record does show that the prosecutor did not object to the 10-year indicated sentence when the court announced it, most significant is the fact that the prosecutor never signed the plea form.

In criminal practice, the phrase "plea to the court" refers to a plea of guilty or nolo contendere to all of the charges, without any promises or participation by the prosecution. (See, e.g., *Liang v. Superior Court* (2002) 100 Cal.App.4th 1047, 1053 [the defendant pled nolo contendere to all charges; defense counsel described plea as "not a *People* versus *West* plea bargain involving the People at all. It was an open plea to this court"]; *People v. Cole* (2001) 88 Cal.App.4th 850, 856 [the defendant pled nolo contendere to all charges; plea form described the disposition as an " 'open plea to court—no promises made' "].) A "plea[] to the sheet" is an admission of all charges, without any promise of consideration from the prosecution. (See *People v. Marsh* (1984) 36 Cal.3d 134, 140 ["defendant makes the unwarranted assumption that a nolo or guilty plea is invalid unless made for a consideration which would support a contract. If that were the law a defendant could not 'plead to the sheet,' simply in the hope that the court will show leniency"].)

10

The record clearly establishes that the October 17, 2014 transaction was not a plea bargain but a plea to the sheet.  Neither party ever contended otherwise.  As such, defendant mistakenly argues the court breached the plea agreement by sentencing him to nine years on count 1 plus one year for the gun enhancement rather than as noted in his plea form.  In addition, our conclusion that there was no plea bargain means that the procedural requirements of section 1192.5 were not applicable.  Defendant does not seek to withdraw his plea to the court or claim he did not voluntarily, freely, and intelligently plea to the court.  In fact, defendant believes the plea was "fair and just."  Rather, it appears defendant is attempting to reduce his sentence, even though he had already received a great benefit and avoided a potentially much greater sentence if convicted of all of the charges, by the passage of Proposition 47.

Furthermore, it does not necessarily follow that the disposition was a *proper* indicated sentence.  An indicated sentence is one that the trial court indicates it will impose " 'irrespective of whether guilt is adjudicated at trial or admitted by plea.' [Citations.]" (*Ramos*, *supra*, 235 Cal.App.3d at p. 1271.)  Years ago, the California Supreme Court recognized as a general principle that it is improper for a trial court to grant any form of leniency to a defendant because he has agreed to plead guilty rather than go to trial:  " 'A court may not offer any inducement in return for a plea of guilty or nolo contendere.  It may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right.' [Citation.]" (*In re*

*Lewallen* (1979) 23 Cal.3d 274, 278-279, quoting *People v. Superior Court* (*Felmann*) (1976) 59 Cal.App.3d 270, 276 (*Felmann*).)

Thus, a trial court is precluded from "negotiating a more lenient sentence than would be imposed after trial in return for a plea of guilty or nolo contendere . . . ." (*Felmann*, *supra*, 59 Cal.App.3d at p. 273.)  Instead, "[l]eniency in return for a plea of guilty or no contest must be negotiated by the defendant with the prosecutor." (*Id*. at p. 276.)

Accordingly, where a defendant pleads guilty without reaching any plea agreement with the prosecution, a reviewing court must determine whether the trial judge accepted the plea "solely in the exercise of his [or her] sentencing discretion" or instead, "determined to accept an offer of the defendant to enter his plea in return for more lenient treatment than he otherwise would have received." (*Felmann*, *supra*, 59 Cal.App.3d at p. 277.)  In the first instance, the trial court would be acting within its proper sentencing authority, but in the second, it "would unconstitutionally be invading the province of the executive branch which had not accepted defendant's offer." (*Ibid*.)

Here, it appears the trial court accepted the plea "solely in the exercise" of its sentencing discretion. (*Felmann*, *supra*, 59 Cal.App.3d at p. 277.)  As the court noted, it was prepared to give defendant the indicated 10-year sentence but could calculate the

term in many different ways considering the numerous charges and enhancement allegations.**4**

Based on the foregoing, we reject defendant's contention that the trial court breached the plea agreement in imposing the indicated sentence.

B.      *Proposition 47*

We also reject defendant's claim that he is "being discriminated against for relief" of Proposition 47 or that he should benefit from Proposition 47.

On November 4, 2014, voters enacted Proposition 47, which became effective the next day.  (Cal. Const., art. II, § 10, subd. (a).)  The focus of Proposition 47 was to render misdemeanors a class of certain drug- and theft-related offenses that previously were felonies or "wobblers" (crimes that can be punished as either felonies or misdemeanors), unless they were committed by certain ineligible defendants.  Proposition 47 also created a new resentencing provision—section 1170.18—by which a person currently serving a felony sentence for an offense that is now a misdemeanor may petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47.  (§ 1170.18, subd. (a).)**5**  A person who satisfies the criteria

---

**4** If we were to accept defendant's argument that the court was required to sentence him as noted in the plea form, then we would find the court to have engaged in illegal plea bargaining because it is impermissible for a trial court to "negotiate" with a defendant to obtain a guilty plea.  (*People v. Orin*, *supra*, 13 Cal.3d at p. 943.)  In that case, defendant would have to withdraw his plea.

**5** Section 1170.18, specifically provides, as is pertinent here, "(a) A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act . . . had this act

*[footnote continued on next page]*

13

in subdivision (a) of section 1170.18 shall have his or her sentence recalled and be "resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id*., subd. (b).) Proposition 47 also created a process whereby eligible persons who have already completed their sentences may have the particular conviction or convictions designated as misdemeanors. (§ 1170.18, subds. (f), (g).)

Proposition 47 added section 490.2, which provides, "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken *does not exceed* nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor" unless the person is otherwise ineligible for misdemeanor resentencing. (Italics added.)

Here, defendant received the benefit of Proposition 47. At the time of sentencing, the trial court specifically reduced the receiving stolen property offense in violation of section 496, subdivision (a) (count 12), to a misdemeanor. The court also specifically advised defendant of his right to petition the court pursuant to section 1170.18 in regard to his present and prior offenses. As such, there is no indication in the record to support defendant's assertions that he cannot benefit from Proposition 47.

---

*[footnote continued from previous page]*
been in effect at the time of the offense may petition for a recall of sentence . . . to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act."

14

C.     *Imposition of Prior Prison Terms*

Although not raised by defendant, we find that the trial court erred in staying, rather than striking, defendant's six prior prison terms.  Defendant admitted serving six prior prison terms within the meaning of section 667.5, subdivision (b).  These six prior prison terms were for five second degree burglary offenses and one forgery offense.  At sentencing, the trial court imposed then stayed imposition of the one-year enhancement for each of the six prior prison term allegations.

The trial court erred by staying the prior prison term enhancements.  An enhancement under section 667.5 cannot be stayed.  (See *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1521.)  A trial court must either impose or strike a prior prison term enhancement pursuant to section 667.5, subdivision (b).  (*People v. Langston* (2004) 33 Cal.4th 1237, 1241 ["the trial court may not stay the one-year enhancement, which is mandatory unless stricken"]; *People v. Campbell* (1999) 76 Cal.App.4th 305, 311 ["the court must either impose the prior prison enhancements or strike them"]; § 1385.)  "The failure to impose or strike an enhancement is a legally unauthorized sentence subject to correction for the first time on appeal.  [Citations.]"  (*People v. Bradley* (1998) 64 Cal.App.4th 386, 391; see *People v. White Eagle*, *supra*, 48 Cal.App.4th at p. 1521.)  It is clear by the trial court's comments that it did not intend to impose the prior prison term enhancements.  Accordingly, we strike these prior prison term enhancements.

In light of the trial court's intent, it is unnecessary to remand for resentencing to enable the trial court to explicitly exercise its discretion.  Such a remand would be a

15

wasteful use of judicial resources. However, we will direct the trial court to amend the abstract of judgment and the court's minute order of the November 6, 2014 sentencing hearing to reflect the six prior prison term enhancements are stricken and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

We further find that the court's minute order of the November 6, 2014 sentencing hearing incorrectly states that the gun enhancements were stayed and then stricken. At sentencing, the trial court imposed the upper term of nine years on count 1 for first degree robbery, plus a consecutive one year for the principal armedwith a firearm (§ 12022, subd. (a)(1)) enhancement, and imposed and stayed the section 12022, subdivision (b)(1) enhancement, for a total term of 10 years. The court then imposed one year each on the gun enhancement allegations under section 12022, subdivisions (a)(1) and (b)(1) attached to counts 2, 3, 4, 6, and 7, but stayed imposition of the sentences on those gun enhancements.

Generally, when there is a conflict between the oral pronouncement of judgment and a minute order, the former controls and the latter is presumed to be the result of clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) The oral pronouncement also controls over the abstract of judgment if the two conflict. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

16

### III

### DISPOSITION

The six prior prison term enhancement allegations are stricken.  The clerk of the superior court is directed to amend the abstract of judgment and the court's minute order of the November 6, 2014 sentencing hearing in accordance with this opinion and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  The judgment, as so modified, is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ         

P. J.

We concur:


HOLLENHORST     

            J.


MILLER        

            J.